IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DENNIS CLARK, JR., <br> No. M11889, <br><br>         Plaintiff, <br><br>   vs. <br><br> WEXFORD HEALTH CARE SERV., INC., <br> JOHN DOE, <br> JOHN R. BALDWIN, <br> WARDEN STEPHEN B. DUNCAN, <br> PHIL MARTIN, <br> J.J. WALKER, <br> Z. BUCHANAN, <br> DR. JOHN COE, <br> MS. POWELL, <br> JANE DOE, <br> NURSE DOE, <br> NURSE DOE # 2, and <br> NURSE DOE # 3, <br><br>         Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )    Case No. 16-cv-00177-SMY <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

      Plaintiff Dennis Clark, Jr., is an inmate currently housed at Lawrence Correctional Center. Pursuant to 42 U.S.C. § 1983, Plaintiff brings this action for deprivations of his constitutional rights with respect to the lack of healthcare afforded him in September 2015.

      This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. The Court is required to dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### **The Complaint**

According to the Complaint (Doc. 1), just before 1:00 a.m. on September 28, 2015, Plaintiff awoke in pain, stiff all over, nauseous and gasping to breathe. His cellmate pushed the emergency button, but no one came. Inmates in nearby cells pushed their emergency buttons and then began yelling for help. After 40-45 minutes, an unidentified officer appeared, apparently in no rush to offer assistance. Plaintiff explained that he was experiencing the effects of a low potassium level in his blood and needed immediate medical attention. About 15 minutes later, the officer returned with an unidentified nurse and several other unidentified officers. The nurse did not believe Plaintiff and spoke and treated him accordingly. Plaintiff was throwing up, crying and begging to be taken to an outside hospital. The nurse eventually instructed an officer to lift Plaintiff into a wheelchair, which the officer attempted to do by himself, exacerbating Plaintiff's pain. Plaintiff was then taken to the healthcare unit.

The nurse called Dr. Coe and returned indicating that Plaintiff was to remain in the healthcare unit until Dr. Coe came into work at 8:00 a.m. However, because there was no open

bed, the nurse instructed officers to return Plaintiff to his cell. The officer who lifted Plaintiff into the bed placed Plaintiff in an uncomfortable position. Plaintiff continued to vomit, so another officer was summoned. The officer said he could not have Plaintiff taken to the hospital. When Plaintiff's cellmate asked about presenting the issue to a sergeant, the officer indicated that the sergeant had been involved in the initial decision to return Plaintiff to his cell. No lieutenant was on duty and a request to involve the duty warden was rebuffed. The officer then walked off.

 Eventually, another unidentified nurse appeared, along with the same group of guards from earlier in the night. Although the nurse did direct that Plaintiff be returned to the healthcare unit, she refused to have him taken to the hospital and expressed her disbelief that Plaintiff was actually ill. At the healthcare unit, the nurse said there was nothing she could do and Plaintiff was left to wait for Dr. Coe. After a few hours, the nurse called Dr. Coe again. Plaintiff was subsequently moved to an uncomfortable chair and left to vomit for hours. The nurse even closed the door so she would not have to see or hear Plaintiff. An unidentified correctional officer did acknowledge that Plaintiff's condition was obvious, but indicated he could not make the nurse do anything to help. The officer did try to assist Plaintiff to ensure he did not choke on vomit and showed "kindness" in other ways. Plaintiff also pleaded with Sgt. J.J. Walker and explained that he needed to be taken to an outside hospital, but Walker only gave Plaintiff a "malicious look," left and never returned.

 When there was a shift change (presumably at 7:00 a.m.), multiple unidentified people passed by without answering Plaintiff's pleas or offering any assistance. When Dr. Coe arrived, he looked at Plaintiff, walked off and did not return for approximately 15 minutes. Dr. Coe questioned how Plaintiff could know his potassium level was low. Plaintiff explained that he

had had this occur before. Coe responded that, even if Plaintiff's potassium was low, he was not going to die. Rather than immediately send Plaintiff to the hospital, Dr. Coe insisted on running a blood test and getting a urine specimen. While the tests were being completed, Dr. Coe had a bed cleared for Plaintiff, put him on an I.V. drip to address dehydration and ordered the nurse to give Plaintiff an anti-nausea injection. The tests confirmed that Plaintiff's potassium level was dangerously low, so Dr. Coe summoned an ambulance to take Plaintiff to the hospital.

Plaintiff was treated at the hospital for several days until his potassium had returned to "a normal level." Plaintiff was returned to prison and placed in his cell rather than being assessed in the healthcare unit. Although a doctor at the hospital had said Plaintiff would need another blood test, no test was performed. It took three days before Plaintiff received medication to maintain his potassium level.

Plaintiff now seeks declaratory and injunctive relief directed at ensuring his medical condition will be "taken seriously," treated properly, and that he will not face "cynicism" in the future. He wants to be transferred to a proper medical facility. He also seeks compensatory and punitive damages.

Based on the allegations in the Complaint, the Court finds it convenient to frame Plaintiff's claims as a single, overarching count:

> **Count 1: Defendants were deliberately indifferent to Plaintiff's serious medical needs, in violation of the Eighth Amendment.**

## Discussion

Although there is some suggestion that Plaintiff may not have exhausted administrative remedies as required by 42 U.S.C. § 19917e, that cannot be determined with certainty at this time. Consequently, the viability of Count 1 against each defendant must be assessed.

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm, including health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). A prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Prison officials can also violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A medical condition need not be life-threatening to be serious; rather, it can be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Even those not directly involved in providing medical care— "non-medical defendants"—can be liable. *See Perez v Fenoglio*, 792 F.3d 768, 781-782 (7th Cir. 2015).

The allegations in Count 1 regarding the failure to offer Plaintiff prompt medical care for what was, according to the Complaint, a readily apparent emergency situation, falls within the ambit of the Eighth Amendment, but that does not end the analysis.

*Personal Involvement*

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810

(7th Cir. 2005) (citations omitted).  Allegations that senior officials were personally responsible for creating the policies, practices and customs that caused a constitutional deprivation can suffice to demonstrate personal involvement for purposes of Section 1983 liability.  *See Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 615 (7th Cir. 2002).  However, the *respondeat superior* doctrine—supervisory liability—does not apply to actions filed under 42 U.S.C. § 1983.  *See,* e.g., *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008).  Moreover, merely naming a defendant in the case caption is insufficient to state a claim.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).

Of the 13 defendants in the case caption, only Sgt. J.J. Walker and Dr. John Coe are identified by name in the narrative of the 26-page Complaint.  Wexford Health Care Services, Inc., IDOC Chief Medical Director "John Doe," IDOC Director John R. Baldwin, Warden Stephen B. Duncan, Health Care Unit Head Administrator Phil Martin, C/O Z. Buchanan, Nurse Powell, Assistant Warden of Programs "Jane Doe," "Nurse Doe," "Nurse Doe #2" and "Nurse Doe #3" are not mentioned.  The corporate healthcare provider and administrators appear to have been named under a theory of supervisor liability which, as already noted, is not actionable.   The Court has reviewed the 26 pages of exhibits Plaintiff submitted along with the Complaint and has spotted only one reference to Wexford Health Services, used only as an adjective to describe "nurses" in an affidavit.  Although the narrative of the Complaint is sufficient to state Eighth Amendment claims against multiple nurses and officers, because so many are involved, the Court is unable to label them and determine who did what.  As such, no claim has been properly pleaded.  Therefore, only Sgt. J.J. Walker and Dr. John Coe remain as possible defendants.

### *Dr. John Coe*

With regard to Dr. Coe, the allegations do not describe deliberate indifference. Rather, Dr. Coe performed reasonable tests to diagnose Plaintiff and took reasonable measures to ease Plaintiff's symptoms while the blood and urine tests were run. Upon seeing the test results, Dr. Coe summoned an ambulance and had Plaintiff taken to the hospital for treatment. At worst, Dr. Coe's failure to take more immediate action when first called by the nurse could be said to be negligent treatment, but not deliberate indifference. Dr. Coe apparently directed the nurse to keep Plaintiff in the healthcare unit until he arrived (approximately seven hours later). Coe cannot be faulted for the nurse returning Plaintiff to his cell instead. As pleaded, no Eighth Amendment claim has been stated against Dr. Coe, who will be dismissed without prejudice.

### *Sgt. J.J. Walker*

It is alleged that Sgt. J.J. Walker was part of the group involved in returning Plaintiff from the healthcare unit to his cell and later walking off rather than getting Plaintiff needed medical assistance. Therefore, a colorable Eighth Amendment claim has been stated against Walker.

### *Warden Stephen B. Duncan*

For reasons discussed above, no claim has been stated against Warden Duncan. However, he must remain in the case in his official capacity for purposes of any injunctive relief that may be ordered (*see Gonzalez v. Feinerman,* 663 F.3d 311, 315 (7th Cir.2011); *Delaney v. DeTella,* 256 F.3d 679, 687 (7th Cir.2001), and to respond to discovery requests aimed at identifying the many unidentified "Doe" defendants referenced in the complaint (*see Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009)).

**Disposition**

IT IS HEREBY ORDERED that, for the reasons stated, **DR. JOHN COE**, **WEXFORD HEALTH CARE SERVICES, INC.**, IDOC Chief Medical Director "**JOHN DOE**," IDOC Director **JOHN R. BALDWIN**, Health Care Unit Head Administrator **PHIL MARTIN**, C/O **Z. BUCHANAN**, **NURSE POWELL**, Assistant Warden of Programs "**JANE DOE**," "**NURSE DOE**," "**NURSE DOE #2**" and "**NURSE DOE #3**" are **DISMISSED without prejudice.**

IT IS FURTHER ORDERED that all claims against Warden **STEPHEN B. DUNCAN** are **DISMISSED without prejudice**; Warden **STEPHEN B. DUNCAN** shall remain a defendant to this case in his official capacity for purposes of injunctive relief and responding to discovery aimed at identifying the unidentified individuals involved in the incident at issue.

IT IS FURTHER ORDERED that **COUNT 1** shall otherwise **PROCEED** against Defendant Sgt. **J.J. WALKER** in his individual capacity.

Plaintiff is **ADVISED** that, in an effort to ensure he does not run afoul of the two year statute of limitations, he may want to consider amending the complaint to better distinguish which unknown individual did what.

The Clerk of Court shall prepare for Defendant Sgt. **J.J. WALKER and STEPHEN B. DUNCAN**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff.  Consequently, Plaintiff's motion for service of process at government expense (Doc. 5) is **DENIED as moot**.

If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the

Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with Defendant's current work address, or, if not known, Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings, including consideration of Plaintiff's motion for recruitment of counsel (Doc. 4).

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 21, 2016**

s/ STACI M. YANDLE<br>**United States District Judge**